**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| AEGIS COUNCIL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 3:10-cv-00756-RCJ-RAM |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MALDONADO *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

This case arises out of a claim for either defamation or business disparagement[1] filed by Plaintiff/Counter-Defendant Aegis Council, LLC ("Plaintiff") in Nevada state court and removed by Defendants/Counter-Claimants Betsy Maldonado and Kevin Montgomery ("Defendants") to this Court. Pending before the Court are Defendants/Counter-Claimants' motion to dismiss (ECF No. 5); Plaintiff/Counter-Defendant's motion for preliminary injunction and request for hearing (ECF No. 7); and Plaintiff/Counter-Defendant's motion to dismiss the counterclaims or, in the alternative, for a more definite statement (ECF No.12). For the reasons given herein, the Court DENIES both motions to dismiss and DENIES the motion for preliminary injunction.

I.    **FACTS AND PROCEDURAL HISTORY**

Plaintiff Aegis Council, LLC filed a verified complaint in this action in the Second Judicial District Court of Nevada on November 18, 2010. (Compl., ECF No. 1-2 at 1).

---

[1] In its reply brief for its motion for preliminary injunction, Plaintiff for the first time identifies that its claim is for "business disparagement" rather than defamation. (ECF No. 18 at 3). Plaintiff concedes that, in briefing, both parties have been addressing a claim for defamation. *Id.* Plaintiff avers that it satisfies the elements of either defamation or business disparagement. *Id.*

According to the complaint, Plaintiff is a Colorado company with a principal place of business at 155 Cadillac Place, Reno, Washoe County, Nevada. *Id.* Defendants Betsy Maldonado and Kevin Montgomery are individuals residing in Belmont, California. *Id.*

According to the complaint, Defendants, using the alias Bam Bam, "began publishing to third parties, including all persons with access to the internet, on the internet website RipoffReport.com, false and defamatory statements of and concerning the Plaintiff." *Id.* at 2. These statements included, inter alia, "That Aegis Council offers a 'tax avoidance scam'"; "This group of people is bilking millions of dollars from unsophisticated and sophisticated investors nationally selling this tax avoidance scheme"; "The fraud is simple"; "Aegis Shield is a fraud. It is not legal and all these companies are scammers"; "We hope that our detailed complaint will stop these predators from financially destroying other middle and high income American families nationally"; and "If you, and I mean Aegis Council and all the 8 various companies, are legitimate companies you will move forward with selling our Aegis Shield hedge to another buyer and return our money (with or without additional broker charges). If you are not legitimate companies you will litigate and bully even more than you already have a consumer whom you have literally taken every last dime from (rape)." *Id.*

Although the cause of action is not specifically identified, the gravamen of the complaint is either business disparagement or defamation seeking a temporary restraining order, preliminary and permanent injunctions, damages, and other relief. *Id.* at 2&4. Defendants filed five counterclaims against Aegis Council. (*See* Am. Answer and Countercl., ECF No. 1-6). Defendants removed based on diversity of citizenship (Notice of Removal, ECF No. 1) and have now moved for dismissal for lack of personal jurisdiction and improper venue or, in the alternative, transfer of venue to the "District of California, San Francisco Division" [sic] pursuant to 28 U.S.C. § 1404(a). (*See* Mot. to Dismiss, ECF No. 5 at 1, 5). Plaintiff filed an opposition to the motion (Pl.'s Opp'n to Defs.'Mot to Dismiss, ECF No. 11) to which Defendants filed an untimely reply. (*See* Defs.'Reply in Supp. of Mot. to Dismiss or for Change of Venue, ECF No. 14).

Plaintiff filed a renewed motion for preliminary injunction, originally filed in state court prior to removal.[2]  (Pl.'s Mot. for Prelim. Inj. & Req. for Hr'g, ECF No. 7 at 2).  Defendants' opposition was untimely filed.  (*See* Opp'n to Mot. for Prelim. Inj., ECF No. 13).  Plaintiff's reply was likewise untimely.  (*See* Reply in Supp. of Mot. for Prelim. Inj., ECF No. 18).

Subsequently, Plaintiff/Counter-Defendant's filed a motion to dismiss the counterclaims or, in the alternative, for a more definite statement (ECF No.12).  Additionally, Defendants/Counter-Claimants filed a second amended answer, counterclaims and jury demand in this Court.  (ECF No. 25).

## II.   ANALYSIS

### A.   Motion to Dismiss / Motion to Transfer (ECF No. 5)

A defendant may move to dismiss for lack of personal jurisdiction before answering. FED. R. CIV. P. 12(b)(2).  Removal to federal court does not waive this defense.  *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929).  Under Rule 12, a party may also move for dismissal for improper venue.  FED. R. CIV. P. 12(b)(3).  In the alternative, a defendant may move for a change of venue in an action removed to federal court for the convenience of parties and witnesses.  *See* 28 U.S.C. §§ 1404(a), 1441(a) (2006).

### i.   Personal Jurisdiction

"After removal, the federal court –takes the case up where the [s]tate court left it off.'" *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974) (citation omitted).  The Federal Rules of Civil Procedure apply to a civil action after it has been removed from state court.  FED.R.CIV.P. 81(c)(1).  Upon removal, a defendant may assert any defense that would have been available to him in state court unless it has been lost because it was not interposed as prescribed by either Rule 12(g) or 12(h).  5C Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1395, at 558 (3d ed. 2004).

---

[2] Plaintiff submits that a bond amount of $1500.00 is adequate in this case and indicates that such amount has already been posted with the Clerk of the Second Judicial District Court.  (ECF No. 7 at 7).  Defendant claims interference with First Amendment rights, harm to the public, and Defendants' alleged inability to retract the statements and therefore seeks a "substantial bond."  (ECF No. 13 at 4).

However, the Eighth Circuit has held that defendants are barred from asserting lack of personal jurisdiction if they have waived that right under the applicable state law. *See Nationwide Eng'g & Control Sys., Inc, v. Thomas*, 837 F.2d 345, 348 (8th Cir. 1988). Under Rule 12 of the Nevada Rules of Civil Procedure, the defense of lack of personal jurisdiction is waived if either omitted from a motion under certain circumstances or "if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof . . . to be made as a matter of course." N.R.C.P. 12(h)(1).

Here, Defendants do not raise lack of personal jurisdiction in either their original or amended complaint filed in state court. (*See* ECF No. 1-4, 1-6). Moreover, there is no indication in the record that Defendant raised this defense via motion. Defendant therefore has waived personal jurisdiction under Nevada state law and is barred from bringing the defense in this Court. Because the Court concludes that Defendants waived their personal jurisdiction defense under Nevada law, and that the waiver bars the defense here, the Court need not consider whether Defendants had sufficient minimum contacts with Nevada to satisfy due process.

### ii.    Venue

When a court makes a determination of venue under Rule 12(b)(3), the well-pled allegations of the Complaint are taken as true, and any evidence submitted by the non-movant in opposition to the Rule 12(b)(3) motion is viewed in the light most favorable to the non-movant. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448–649 (5th Cir. 2008).

Whether venue lies in a particular district is typically governed by 28 U.S.C. § 1391. However, 28 U.S.C. §1441(a) governs venue in removed actions, not § 1391. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–666 (1953) ("Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'"). A party in a removed action may not challenge venue as being improper under 28 U.S.C. § 1406, but may only challenge it as being more convenient elsewhere under 28 U.S.C. §1404. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72–673 (2d Cir. 1998). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought.ö  28 U.S.C. § 1404(a) (2006).  A district court has öbroad discretionö under § 1404(a).  *CFTC v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  A district court is to use a case-by-case analysis of convenience and fairness in ruling on transfer of venue. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Defendants have moved for a dismissal for improper venue, or, in the alternative, a change of venue to the Northern District of California.  (ECF No. 5 at 1).  In their argument, Defendants misrely on 28 U.S.C. § 1391(a) to determine venue.  *See id.* at 3.

Defendants argue that it will be övery difficultö to litigate outside their district as their files and residence are there.  *Id.* at 4.  Further, the defamation occurred there and ö[Plaintiff][3] travelled to California to present its pitch and accepted Defendantsø money there. . . .ö  *Id.* at 4ó5.

In its opposition, Plaintiff avers Nevadaøs strong interest in protecting businesses such as Plaintifføs.  (ECF No. 11 at 13).  Further, it argues that Nevada law governs and courts in Nevada are more familiar with Nevada law.  *Id.*  Plaintifføs principal place of business and key witnesses are in Nevada.  *Id.*  Costs of litigation and access to evidence about Plaintifføs business likewise favor Reno.  *Id.*  Defendantsø inconvenience is mitigated by the ability öto communicate to Nevada via electronic means with great ease.ö  *Id.* at 14.

In reply, Defendants argue that it has not been determined whether Nevada law will apply.  (ECF No. 14 at 2ó3).  Further, Plaintiff has a ögreat deal of contactö with Nevada whereas Defendants have little.  *Id.* at 3.  Defendants further argue (without authority) that the contacts related to the defamation claim are not forum specific and electronic filing under the ECF system renders court costs the same regardless of where the action is taken.  *Id.*  Deposition costs of the Reno witnesses will not change regardless of venue and both parties have secured counsel in Reno to take depositions.  *Id.*  Finally they aver that ease of access to witnesses is balanced in that there are two Defendants in California and three key witnesses in Reno.  *Id.*

Defendants conflate venue and forum analysis, but in the end their arguments indicate that the two venues at issue are at best equally appropriate.  Although three potential key

---

[3] The Motion to Dismiss incorrectly states öDefendantsö here.

witnesses for Plaintiff have been named, there is some indication that there may be many more. Both parties have retained counsel in Reno. On balance, laying venue in Reno, Nevada is proper. This court therefore denies the motion to dismiss for improper venue or to transfer.

### B.      Motion for Preliminary Injunction (ECF No. 7)

The Ninth Circuit in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently held that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 129 S. Ct. 365, 374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Ninth Circuit has explicitly recognized that its "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Ninth Circuit's pre-*Winter* "sliding-scale" standard and remanding for application of the proper standard).

A recent Ninth Circuit ruling relying largely on the dissenting opinion in *Winter* parsed the language of *Winter* and subsequent Ninth Circuit rulings and determined that the sliding scale test remains viable when there is a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052–53 (9th Cir.

2010).  This case presents some difficulty in light of *Winter* and prior Ninth Circuit cases.  To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls.  *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel).  In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest."  *Winter*, 129 S. Ct. at 374 (citations omitted) (emphases added).  The test is presented as a four-part conjunctive test and the word "likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong.  In rejecting the sliding-scale test, the *Winter* Court specifically emphasized the fact that the word "likely" modifies the irreparable-injury prong, *see id.* at 375, and the word modifies the success-on-the-merits prong the same way, *id.* at 374.

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits.  "Likely" means "having a high probability of occurring or being true."  Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/likely.  Black's defines the "likelihood-of-success-on-the-merits test" as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ."  *Black's Law Dictionary* 1012 (9th ed. 2009).

### i.    Likelihood of Success

Plaintiff does not specifically identify the cause of action in its complaint, but it essentially averred the elements of a defamation claim.  (*See* ECF No. 1-2).  Plaintiff confirmed this in its Motion for Preliminary Injunction where it claims "the Right to Injunctive Relief for Defamation of An Ongoing Business."  (ECF No. 7 at 3).  In its reply, Plaintiff has since conceded that the parties have treated the claim as one for defamation.  (ECF No. 18 at 3).  Plaintiff now correctly claims that the action is properly one for business disparagement.  *Id.*

Statements accusing an individual of personal misconduct in his or her business or attacking the individual's business reputation may be brought as an action for defamation per se.

*Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009). However, if the statements are directed towards the quality of the individual's product or services, the claim is one for business disparagement. *Id.* The elements of business disparagement are: "(1) a false and disparaging statement,[] (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages."[4] *Id.* The key difference between business disparagement and defamation is that for a claim of business disparagement to lie, the plaintiff must prove malice and special damages. *Id.* Malice is shown where plaintiff can prove that defendant published a disparaging remark with "the intent to cause harm to the plaintiff's pecuniary interests, or the defendant published a disparaging remark knowing its falsity or with reckless disregard for its truth." *Id.* at 504-05. As to damages, plaintiff must prove special damages and show that defendant's disparaging remarks were the proximate cause of the economic loss. *Id.* at 505. The plaintiff may bring evidence of general business decline, but it must show that the business decline was the result of the disparaging remarks and must eliminate other causes.[5] *Id.*

As evidence, Plaintiff presents the declarations of Mark Wray and Stephanie Olsen incorporated into its motion. (Decl. of Mark Wray, Dec. 14, 2010, ECF No. 7 at 8-9); (Decl. of Stephanie Olsen, Dec. 14, 2010, ECF No. 7 at 10-11). Plaintiff also relies on its verified complaint. (ECF No. 1-2). Plaintiff avers that on or about October 27, 2010, Defendants began publishing false and defamatory statements on the website RipoffReport.com without privilege regarding its business. (ECF No. 1-2 at 2). Exemplary statements are presented in Plaintiff's verified complaint and repeated in their motion for preliminary injunction. (ECF No. 1-2 at 2); (ECF No. 7 at 5-6, 11). In her declaration, Stephanie Olsen provides background on Plaintiff's program and services and Plaintiff's interactions with Defendants. (ECF No. 7 at 10). Ms. Olsen then states she has read Defendants' postings on RipoffReport.com concerning Plaintiff

---

[4] In contrast, the elements of defamation are: "(1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *See Chowdry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993). "If the defamation tends to injure the plaintiff in his or her business or profession, it is deemed defamation per se, and damages will be presumed." *Id.*

[5] In contrast, to show defamation per se, plaintiff must only show some evidence of fault amounting to at least mere negligence and damages are typically presumed except under limited circumstances. *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d at 504-05.

and declares that "each [of the statements] is false and defamatory as set forth in [the] Verified

Complaint." *Id.* at 10–11.  She further declared that "[t]his investment is not a scam and is not

fraudulent." *Id.* at 11.  Damages in excess of $10,000 are claimed.  (ECF No. 1-2 at 3).

In opposition, Defendants argue that Ms. Olsen's declaration is conclusory and does not

establish that Defendants' alleged statements are false.[6]  (ECF No. 13 at 2).  Defendants further

object on evidentiary grounds in that Ms. Olsen's statements about the website are hearsay

within hearsay and failure to present printouts of the actual website violates the best evidence

rule.  (ECF No. 13 at 2).  These objections are unpersuasive.  Though supporting pages from the

RipoffReport.com website were not attached to the motion for preliminary injunction (ECF No.

7), they are attached to Plaintiff's opposition to the motion to dismiss (ECF No. 11) and are thus

before this Court.  (*See* ECF No. 11-4).

Defendants credibly argue that the alleged postings on RipoffReport.com are puffery or

statements of opinion which cannot reasonably be determined to be false.  Even statements of

legal import such as "Aegis Shield is a fraud" and "It is not legal" are not declared with such

specificity to reasonably determine their truth or falsity.  *Cf. Coastal Abstract Serv., Inc. v. First

Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling

from a court or agency of competent jurisdiction, statements by laypersons that purport to

interpret the meaning of a statute or regulation are opinion statements, and not statements of

fact.").  Plaintiff provides virtually no independent facts to aid the Court in determining the

falsity of the alleged postings.  Further, Plaintiff provides no specific evidence linking either its

alleged damages or a general business decline to the alleged "false and defamatory statements"

made by Defendants.  In short, Plaintiff has not shown that it would be likely to succeed either

on a claim of defamation per se (even if it applied here) or even less so on a claim of business

disparagement.

---

[6] Defendants further state that attribution of the alleged defamatory statements to Defendants is unclear in Ms.
Olsen's declaration.  (ECF No. 13 at 2).  In this, they may be correct.  However attribution is properly stated in
Plaintiff's verified complaint.  (*See* ECF No. 1-2 at 2).

Evidence presented by Plaintiff in support of its claim is conclusory at best and does not substantially establish a likelihood of success on the merits.  As such, the preliminary injunction fails as to this factor without further analysis.  However, the Court will address the other factors.

ii.    **Irreparable Injury**

"The right to carry on a lawful business without obstruction is a property right, and acts committed without just cause or excuse which interfere with the carrying on of plaintiff's business or destroy its custom, its credit or its profits, do an irreparable injury and thus authorize the issuance of an injunction." *Guion v. Terra Marketing of Nevada, Inc.*, 523 P.2d 847, 848 (Nev. 1974).  However, "publication of unjust and malicious matter will not be restrained simply upon a showing of its falsity." *Id.*  "Equity will, however, restrain tortious acts where it is essential to preserve a business or property interests and also restrain the publication of false and defamatory words where it is the means or an incident of such tortious conduct." *Id.*

Plaintiff asserts that continued publication of the alleged defamatory statements will cause irreparable harm in that the statements are targeted towards Plaintiff's business and state that the business is a fraud.  (ECF No. 7 at 6).  Defendants counter that loss of business is compensable with damages.  (ECF No. 13 at 3).

Although Plaintiff relies on *Guion*, the conduct at issue in that case is distinguishable.  In that case, the appellant, Mr. Guion, had a falling out with an alleged representative of the appellee. *Guion,* 523 P.2d at 847.  Mr. Guion subsequently displayed several signs, some of which were attached to his car, in front of appellee's business location which stated, "A Terracor representative threatened to kill me!  What next, Rick Johnson.  I regret having done business with a Terracor representative.  Doing business with a Terracor representative introduced me to a new low in ethics." *Id.*  There, the court found sufficient irreparable injury to affirm preliminary injunction against the appellant. *Id.* at 848.

Here, however, Defendants' statements are displayed on a website specifically designed for remarks from unsatisfied clients and customers.  There is no showing that Defendants are displaying their statements at Plaintiff's business or at its client seminars.  While it is

conceivable that some irreparable injury may be suffered by Plaintiff's company, this factor at most tips only slightly in favor of Plaintiff.

### iii.      Balance of Hardships

Plaintiff asserts that (potential) business loss from Defendants' statements weighs the balance of hardships in its favor.  (ECF No. 7 at 6).  There is no corresponding hardship in preventing Defendants from defaming Plaintiff.  *Id.*  Defendants do not directly address balance of hardships, but they do state that the owner of the website at issue has set it up such that it is impossible to remove the offending language.[7]  (ECF No. 13 at 3);  (Decl. of Betsy Maldonado, Jan, 4, 2011, ECF No. 13-1).  To the extent that Plaintiff can show the potential for business loss, the balance of hardships weighs in Plaintiff's favor.

### iv.      Advancement of the Public Interest

Defendants argue that injunctive relief in this case impinges on their Constitutional right of free speech and consumer education.  (ECF No. 13 at 3).  While such arguments are not an absolute bar to a claim of defamation or business disparagement, it is not necessary to reach First Amendment issues where the preliminary injunction motion fails on other grounds.

While the potential for injury to reputation and balance of hardships tend to weigh slightly in Plaintiff's favor, Plaintiff has not established likelihood of success on the merits based on evidence presented in its motion and verified complaint.  Short of making defamatory statements, Defendants are entitled to their opinion and their right to share it with others.  Further, there appears to be no reasonable means for Defendants to remove the offending statements as they do not control the website where they are presented.  This Court therefore denies the motion for preliminary injunction.

### C.      Plaintiff's Motion to Dismiss Counterclaim of Defendants Maldonado and Montgomery or in the Alternative for a More Definite Statement (ECF No. 12)

Plaintiff moves to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6).  (Mot. to Dismiss, ECF No. 12 at 2).  Plaintiff specifically moves to dismiss Defendants' "Amended

---

[7] In its reply, Plaintiff argues that if the policy of the RipoffReport website is to refuse to remove materials posted by users, the Court could fashion an appropriate equitable relief such as requiring Defendants to post retractions, disclaimers or apologies.  (ECF No. 18 at 7).

Answer and Counterclaimö filed on December 6, 2010 (ECF No. 1-6). *Id.* at 2.  On January 8, 2011, Defendants filed a motion to amend/correct their amended answer and counterclaim. (Mot. to Amend, ECF No. 17).  On January 26, 2011, Judge McQuaid granted Defendantsø motion to amend and granted Defendants leave to serve and file the second amended answer and counterclaim.  (Order, ECF No. 24).  On January 28, 2011, Defendants filed their Second Amended Answer and Counterclaim with this Court.  (Second Am. Answer, ECF No. 25).  This Court denies Plaintifføs motion to dismiss the first amended answer and counterclaim as moot because that pleading is no longer operative.

      **IT IS THEREFORE ORDERED** that Defendantsø motion to dismiss for lack of personal jurisdiction and improper venue or to transfer (ECF No. 5) is **DENIED**.

      **IT IS FURTHER ORDERED** that Plaintifføs motion for preliminary injunction (ECF No. 7) is **DENIED**

      **IT IS FURTHER ORDERED** that Plaintifføs motion to dismiss the counterclaims or, in the alternative, for a more definite statement (ECF No. 12) is **DENIED**.

      **IT IS SO ORDERED**.


DATED: This 30th day of March, 2011

_____
UNITED STATES DISTRICT JUDGE